**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Lindsay SAINTIL, a/k/a Gregorie Michelin, Defendant–Appellant.**

**No. 90–5460.**

United States Court of Appeals, Fourth Circuit.

Argued July 20, 1990.

Decided Aug. 21, 1990.

As Amended Aug. 22 and Aug. 27, 1990.

Richard Allen Elmore, argued, Pfaff, Elmore & Albright, Greensboro, N.C., for defendant-appellant.

David Bernard Smith, Asst. U.S. Atty., argued, (Robert H. Edmunds, Jr., U.S. Atty., Benjamin H. White, Jr., Asst. U.S. Atty., on brief), Greensboro, N.C., for plaintiff-appellee.

Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

PHILLIPS, Circuit Judge:

Lindsay Saintil appeals his sentence imposed under the Sentencing Guidelines upon his plea of guilty to conspiracy to possess and distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. He contends that the sentencing court erred in making an upward adjustment for obstruction of justice. Finding no error, we affirm.

I

There are no factual disputes in this case. While driving a car with almost 36 grams of crack and a loaded semi-automatic weapon, Saintil was arrested along with five other codefendants in Greensboro, North Carolina. Upon questioning by the police, Saintil identified himself as Gregorie Michelin, and provided vague answers to other questions. Car keys seized from Saintil at the stop were found to fit another nearby-parked car which, after a search, yielded a traffic citation in Saintil's name. While being processed by the officers, Saintil again used the Michelin name. At his interview with the local pretrial services officer, Saintil continued to maintain that his name was Michelin, despite being provided with an Advice of Rights Form, which advised that providing any false information could lead to a perjury charge. J.A. 31–32.

When arraigned before a magistrate later that day, Saintil finally gave his true name. When the court later appointed counsel for Saintil that counsel made a point to clear up any lingering doubts about Saintil's true identity at a detention hearing the following week. After the government returned a six-count indictment against Saintil and five other defendants, Saintil pleaded guilty to count I (the conspiracy count), thereby becoming the first of the group to reach a plea agreement.

The presentence report prepared for the sentencing judge erroneously indicated that Saintil used a false name before the magistrate at his arraignment. At the sentencing hearing, government counsel told the court that Saintil had in fact told the truth before the magistrate. Despite this clarification, the court followed the recommendation of the presentence report and ordered a two-level enhancement for obstruction of justice because of the continued use of the alias. Finding that the defendant's situation was an "extraordinary one," the district court also gave Saintil a two-level downward reduction for acceptance of responsibility. Using Saintil's criminal history and role in the offense, the court sentenced him, per the plea agreement, to the low end of the sentence range, 292 months. Saintil appeals only the two-level enhancement for obstruction of justice.

## II

Guidelines § 3C1.1 provides:

If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.

United States Sentencing Commission, *Guidelines Manual*, § 3C1.1 (Nov.1989) (hereinafter U.S.S.G.). The application notes to § 3C1.1 provide a non-exhaustive list of what may constitute obstructionist conduct, and include "testifying untruthfully or suborning untruthful testimony concerning a material fact, ... during a preliminary or grand jury proceeding, trial, sentencing proceeding, or any other judicial proceeding." U.S.S.G. § 3C1.1, comment (n.1(c)). Application note 1(e) adds to the list "furnishing material falsehoods to a probation officer in the course of a presentence or other investigation for the court." U.S.S.G. § 3C1.1, comment (n.1(e)).

Saintil maintains that his brief use of an alias, which was followed by a truthful representation before the magistrate and a quick guilty plea, "does not appear to fit the type of conduct outlined in" § 3C1.1. Appellant's Br. at 8. Because the question

whether § 3C1.1 applies to Saintil's conduct requires an interpretation of the scope of the provision, we review the matter *de novo*. *United States v. Daughtrey*, 874 F.2d 213, 217–18 (4th Cir.1989).

In support of his argument, Saintil points to two Eighth Circuit cases, *United States v. Blackman*, 897 F.2d 309 (8th Cir.1990), and *United States v. Werlinger*, 894 F.2d 1015 (8th Cir.1990). In *Blackman*, the district court granted an upward adjustment under § 3C1.1 because the defendant used an alias during a detention hearing and pretrial interview. The court of appeals, citing a prior decision, *United States v. Brett*, 872 F.2d 1365, 1372–73 (8th Cir. 1989), that required district judges to make a preliminary finding that the use of an alias was a *material* falsehood, reversed and remanded. The court concluded that because the police knew all the aliases used by Blackman "from the moment" they arrested him, the defendant's "use of an alias did not have a material bearing on the government's investigative efforts...." 897 F.2d at 319. Recently, however, the same Eighth Circuit panel, upon rehearing, reached a contrary result. Writing for a divided court, Judge McMillian rejected the defendant's argument that no enhancement under § 3C1.1 could be given without a specific finding that the conduct somehow impeded the investigation or proceeding. Instead, the majority concluded that "Blackman's use of an alias qualified him for an increase under Guideline § 3C1.1 regardless of whether the authorities were actually foiled by his false identification.... Therefore no actual prejudice to the government is required." *United States v. Blackman*, 904 F.2d 1250, 1259 (8th Cir. June 4, 1990).

Similarly, in *Werlinger*, the Eighth Circuit reversed an upward adjustment for obstruction of justice because all of the defendant embezzler's obstructionist conduct occurred before his arrest. Noting that all embezzlers necessarily take affirmative steps to conceal their actions, and that such conduct is exactly that penalized by the law, Chief Judge Lay wrote that the guidelines "did not intend for the obstruc-

tion adjustment to apply cumulatively to the same conduct." 894 F.2d at 1017.

Although instructive, *Blackman* (even before its rehearing) and *Werlinger* are not really on point. Despite the defendant's argument to the contrary, the police here were not aware from the beginning, as in *Blackman,* that Saintil was using an alias; finding Saintil's name on a parking ticket in another car might raise suspicions over the use of the name Michelin, but the police did not have a record of all of Saintil's aliases as in *Blackman.* Similarly, the conduct that led to the obstruction adjustment here, the giving of a false name, is wholly unrelated to the underlying charge in the indictment, drug conspiracy, making the *Werlinger* argument regarding cumulative punishment inapposite.

What is relevant from *Blackman,* however, is the requirement of materiality. In addition to *Blackman* and *Werlinger,* several other courts have required that a defendant's misrepresentations be material to a probation officer's investigation. *See United States v. Baker,* 894 F.2d 1083, 1084 (9th Cir.1990) ("lies to the probation officer certainly had the potential for obstructing justice and were therefore material for purposes of Sentencing Guidelines § 3C1.1"); *Brett,* 872 F.2d at 1372–73 (giving alias to arresting officer had material effect on government's time, manpower, and money); *United States v. Patterson,* 890 F.2d 69, 72 (8th Cir.1989) (use of false name at time of arrest "could" have been material). *But cf. United States v. Irabor,* 894 F.2d 554, 556 (2d Cir.1990) (§ 3C1.1 applies "regardless of whether an investigation or proceeding is thereby actually impeded"). However, none of these courts has required any showing that the government actually was harmed, in terms of time and/or resources expended, by the use of a false name. *See, e.g., Patterson,* 890 F.2d at 72; *Baker,* 894 F.2d at 1084.

In this case, the district court did not make a specific finding of materiality. Conceivably, we could remand for such a determination which would then be reviewable only for clear error. *See United States v. Williams,* 897 F.2d 1034, 1040–41 (10th Cir.1990). Under the circumstances, however, we think this not warranted, for the record sufficiently indicates an implicit finding of materiality.

At the sentencing hearing, the government prosecutor stated to the court that:

> It's certainly material both at the time of arrest for the investigating officers to know exactly who they have in their custody, and it's also very, very material to the Court and the pre-trial servicing officer to know exactly who the person is in order to be able to conduct their investigation, in order to be able to adequately advise the Court of the matters that are in question at the time of the initial appearance.
>
> I do recognize that we would have had a much stronger case if [Saintil] had not revealed his true name to the magistrate than we do now, but I still think that we have a strong enough case to meet the standard.

J.A. 35. Just after these comments were made, the district court noted that "[w]ell, this admitted conduct certainly violates Section 3C–1.1." *Id.* It is therefore clear that the government not only made a proffer of materiality, but that the district court considered and found Saintil's conduct material. We cannot hold that finding clearly erroneous. It is in substantial accord with findings of materiality that have been upheld in other cases on generally comparable facts. *See Brett,* 872 F.2d at 1372 (alias at time of arrest); *Blackman,* 897 F.2d at 318 (alias at time of detention hearing).

The sentence imposed is therefore affirmed.

AFFIRMED.