UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

JAN RUMMAGE DOWD,
            *Defendant-Appellant.*

No. 00-4475

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CR-99-374-1)

Submitted: December 21, 2000

Decided: February 16, 2001

Before WIDENER, LUTTIG, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Tamura D. Coffey, Bobby E. McCroskey, WILSON & ISEMAN, Winston-Salem, North Carolina, for Appellant. Walter C. Holton, Jr., United States Attorney, L. Patrick Auld, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Jan Rummage Dowd appeals the sentence imposed on her after she pled guilty to unlawfully entering a bank with the intent to commit larceny therein, in violation of 18 U.S.C. § 2113(a). Finding no error, we affirm.

Dowd formerly worked for Lexington State Bank, Lexington, North Carolina, where her duties included dealing with automatic teller machines ("ATMs"). During the spring and summer of 1999, she and her then-boyfriend, Larry Goodman, discussed and made preparations for the unlawful entry of the ATMs. On October 7, 1999, Dowd and Goodman traveled in Dowd's car to Myrtle Beach, South Carolina, where they checked into a hotel in order to establish a false alibi for the offenses. There was a firearm in the trunk of the car.

The next day, Dowd and Goodman returned to Lexington, North Carolina. They parked Dowd's car at a storage facility; the firearm was still in the trunk. Dowd and Goodman then drove a motorcycle from the storage facility to four ATMs, each of which they unlawfully entered. Between the second and third unlawful entries, Dowd and Goodman returned to the storage facility to load stolen loot into Dowd's car and to call in a diversionary bomb threat. After the fourth unlawful entry, they again returned to the storage facility where they picked up Dowd's car. The two then disposed of the motorcycle and drove back to Myrtle Beach in Dowd's car, still with the firearm in the trunk of the car.

On October 9, 1999, Dowd and Goodman returned to Lexington so that Dowd could present the false alibi to bank and law enforcement officials investigating the unlawful entries. Thereafter, knowing that an official inquiry had begun, Dowd and Goodman concealed evidence of their crimes by burying part of the stolen money and laundering portions of it through Goodman's business. After Dowd's arrest, she sent Goodman a letter in which she sought to insure the continued coordination of their false alibi.

Dowd pled guilty to four counts of unlawfully entering a bank with the intent to commit larceny therein, in violation of 18 U.S.C. § 2113(a). The district court sentenced her to thirty-six months, a sentence that included a two-level enhancement for possession of a dangerous weapon pursuant to *U.S. Sentencing Guidelines Manual* § 2B2.1(b)(4) (1998), and a two-level enhancement for obstruction of justice pursuant to USSG § 3C1.1. Dowd timely appealed, claiming that the district court misconstrued, and thus misapplied, the sentencing guidelines.

We review factual determinations regarding the application of the sentencing guidelines for clear error and legal questions de novo. *United States v. Saintil*, 910 F.2d 1231, 1232 (4th Cir. 1990); *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir. 1989). On appeal, Dowd contends that the district court misapplied § 2B2.1(b)(4) because there was insufficient evidence to demonstrate that she "possessed" the gun during the commission of the offenses. Specifically, she claims that because the gun was locked in the trunk of her car, and because the car was left at the storage facility during the unlawful entries, there was not sufficient proximity between the criminal acts and the gun to warrant a finding that she "possessed" the gun during the commission of the offenses. Likewise, Dowd claims that the district court misapplied § 3C1.1 because the evidence was insufficient to establish that investigators were actually misled by her false alibi. We disagree.

In order to avoid an adjustment for possession of a dangerous weapon, Dowd must demonstrate that it is "clearly improbable" that she possessed the weapon during the commission of the offense. *See e.g.*, *United States v. Harris*, 128 F.3d 850 (4th Cir. 1997); *United States v. Apple*, 962 F.2d 335, 338 (4th Cir. 1992). Dowd has made no such showing. The term "offense," for purposes of determining relevant conduct under the sentencing guidelines, refers not only to the narrowly defined elements of the specific offense, but also includes all conduct in preparation for the offense or in the course of avoiding detection. USSG § 1B1.3(a)(1). Dowd does not contest the fact that the firearm in question was in her car when she went to Myrtle Beach to set up the false alibi in preparation for the unlawful entries. Further, she does not contest the fact that the firearm was in the car while Dowd was attempting to avoid detection for having committed the

crimes. We are, therefore, unable to conclude that it is "clearly improbable" that Dowd possessed the gun at some point relevant to the offenses. Accordingly, we find that the district court properly applied the adjustment for possession of the firearm.

We also disagree with Dowd's claim that, because investigators were not significantly misled by the fact that she provided a false alibi, she did not obstruct justice. An attempt to impede an investigation of the offense provides a sufficient basis for the adjustment. *United States v. Hicks*, 948 F.2d 877, 884-85 (4th Cir. 1991). Dowd does not challenge the fact that she attempted to impede the investigation; she merely states that the attempt was ineffective. Therefore, the district court correctly concluded that an obstruction adjustment was warranted. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

*AFFIRMED*